[Nos. 45360, 45580. En Banc. January 24, 1980.]

THE STATE OF WASHINGTON, *on the Relation of Washington Federation of State Employees, AFL–CIO,* ET AL, *Appellants,* v. THE BOARD OF TRUSTEES OF CENTRAL WASHINGTON UNIVERSITY, ET AL, *Respondents.*

WASHINGTON FEDERATION OF STATE EMPLOYEES, AFL–CIO, *Appellant,* v. COMMUNITY COLLEGE DISTRICT No. 17, *Respondent.*

*Dean A. Floyd, Slade Gorton, Attorney General,* and *Thomas F. Carr, Assistant,* for appellants.

*Slade Gorton, Attorney General,* and *Owen F. Clarke, Jr.,* and *David A. Saraceno, Assistants,* for respondents.

HICKS, J.—These cases, consolidated for review, are before this court on direct appeal pursuant to RAP 4.2. The Washington Federation of State Employees (WFSE) appeals an order of dismissal entered in its mandamus action against Central Washington University (Central) in Kittitas County Superior Court, and a similar order of dismissal in an action against Spokane Community College (the College) in Spokane County Superior Court. The Higher Education Personnel Board (HEPB) acted as an intervenor in the proceedings against Central and has also appealed. We reverse Central and affirm the College.

CENTRAL WASHINGTON UNIVERSITY—HEPB–ULP No. 5

The facts, as found by HEPB in an unfair labor practice hearing, are not disputed by respondent Central. WFSE is the bargaining representative for certain classified employees (trades and janitorial) at Central. Central and WFSE were parties to a collective bargaining agreement which expired June 30, 1975, and on May 14, 1975, WFSE requested negotiations with Central with the objective of entering into a new agreement.

Both sides presented contract proposals, and bargaining commenced in August. At the outset, the negotiating teams discussed the extent of their authority. The WFSE team stated that it had authority to contract, subject to the formality of membership ratification. Central's representatives stated they made recommendations to the Board of Trustees which had sole authority to approve the contract. Discussions continued through October, interrupted intermittently to allow the negotiators an opportunity to consult with their respective principals.

Eventually an agreement was reached between the negotiating teams. October 31, 1975, after ratification by WFSE members, the proposal was presented to Central's Board of Trustees for approval. Only then did the trustees decide to employ an outside consultant to review the agreement. November 21, 1975, in executive session, the Board of Trustees rejected the proposed contract. Between December 1975 and June 1976, Central sought renegotiation while the WFSE sought to identify contract items deemed unacceptable by the trustees. June 8, 1976, Central advised the WFSE it wished to renegotiate the preamble, articles 1–9, 14, 16–18, 21, and the appendices.

Meanwhile on April 28, 1976, WFSE had filed unfair labor practice charges with HEPB, a 3–member board created by the legislature in 1969 and charged with enforcing RCW 28B.16, the State Higher Education Personnel Law. Following an investigation and unsuccessful mediation attempt, the HEPB director issued a complaint against Central. WAC 251–14–080(3). The HEPB held a hearing in

October 1976. November 13, 1976, it entered findings, conclusions and an order, the purport of which was that Central had failed flagrantly to bargain in good faith under RCW 41.56.140(2). *See* WAC 251–14–070(1)(d); RCW 41.56.030(4). The HEPB (1) ordered into effect the contract which had been ratified by WSFE members, retroactive to November 21, 1975; (2) awarded litigation expenses (attorney fees, costs and witness fees) to WFSE; and (3) ordered Central's trustees to "refrain from engaging in the same or similar conduct in future negotiations . . ." Central objected to the second part of the order, claiming the HEPB lacked authority to award attorney fees and costs. May 4, 1977, the HEPB entered a supplemental order directing payment of $6,558.97 in litigation expenses, as established by a cost bill and affidavit submitted by the WFSE.

In November 1977, after refusal by Central to comply with the HEPB order to pay litigation costs, WFSE commenced a mandamus action in Kittitas County Superior Court. The HEPB intervened on WFSE's behalf with the consent of both parties.

Following a hearing on January 25, 1978, the trial court entered an order dismissing the action. It found the HEPB had no statutory authority to award costs and attorney fees, and further, that no private agreement or equitable grounds justified such an award. The WFSE filed a notice of appeal to this court, joined by the HEPB and we accepted direct review.

SPOKANE COMMUNITY COLLEGE
HEPB–ULP No. 9—HEPB–ULP No. 12

This appeal involves two cases in which the HEPB found the College guilty of unfair labor practices with respect to two separate bargaining units. In HEPB–ULP No. 9, the College was found to have violated the rights of trade and craft employees. A similar finding as to office, clerical and food service employees was made in HEPB–ULP No. 12.

HEPB–ULP No. 9:

WFSE presented a contract proposal to the College on February 19, 1976. Bargaining began in June with the College represented by a professional negotiator. Apparent agreement was reached in August 1976. A change in certain administrative personnel of the College occurred about this time. Consultation with the assistant attorney general assigned to the College regarding certain provisions in the proposed contract prompted the new president to object to article 4 (allowing time off for attending contract administration training sessions). The president also offered a disputed interpretation of article 6, regarding the authority of the joint labor management committee. The asserted reason for modifying article 4 was a potential violation of Const. art. 8, § 5 (prohibition against gifts of state funds). In January 1977, the College Board of Trustees deleted certain portions of the questioned articles and ratified the remainder of the contract.

In March 1977, WFSE filed unfair labor practice charges. A hearing was held July 7 and the HEPB issued its findings and conclusions in August 1977. It found the College had breached its obligation to bargain in good faith in that it failed to clarify the authority of its negotiator before bargaining began or, alternatively, failed to accept in every respect the contract as finally presented to it; unduly delayed ratification of the agreement; attempted to change the contract by unilaterally deleting two words from the first sentence of article 4,[1] rather than seeking to reopen the matter for further negotiation. It ordered the College to ratify article 4 and awarded attorney's fees and costs to WFSE. In February 1978, a supplemental order was entered directing payment of $3,012.09 in litigation expenses.

---

[1] "The District agrees to allow employees selected or elected by the Union time off with no loss in pay to attend Union sponsored programs dealing with education and training of employee representatives in the administration of the Agreement, Higher Education Personnel Board rules and regulations, and Civil Service Law."

HEPB–ULP No. 12:

July 5, 1975, the College entered a collective bargaining agreement with its clerical and food service workers. The contract provided for an automatic 1–year extension past its expiration date (July 5, 1977), unless 60 days prior thereto one of the parties sought modification. By letter dated June 30, 1977, the College president advised WFSE that the district considered article 6 (paid leaves for union activity) contrary to Const. art. 8, § 5. The College indicated that it would not enforce the article. The College neither stated a desire to renegotiate the agreement nor a determination to seek declaratory relief pursuant to article 17 of the agreement.

August 18, 1977 (subsequent to action in HEPB–ULP No. 9), WFSE filed unfair labor practice charges with the HEPB. September 21, the HEPB held a hearing; it filed its findings and conclusions October 17, 1977. The College's action was found to constitute an anticipatory breach of its good faith obligation to attempt reopening of negotiations or to seek declaratory relief in an appropriate forum and thereby constituted an unfair labor practice. The College was ordered to honor article 6 and to pay WFSE's attorneys' fees and costs. Following submission of the WFSE's cost affidavit, the HEPB directed payment of $1,576.88.

In March 1978, WFSE instituted a mandamus action in Spokane County Superior Court seeking enforcement of the HEPB's orders awarding attorney fees and costs in both unfair labor practice proceedings. May 19, 1978, following a hearing, the court entered an order dismissing WFSE's petition. The WFSE sought direct review in this court which we accepted.

## ISSUES

Does the HEPB have authority under RCW 41.56.160 to award attorney fees and costs in an unfair labor practice proceeding? If the HEPB has authority to award such expenses, was it an abuse of discretion to exercise that authority in the instant cases?

Initially, it may be noted that neither Central nor the College disputed the findings made by the HEPB. Nor does either institution challenge the HEPB's conclusion that each had committed unfair labor practices. Both institutions have complied with the so–called "substantive" portions of the HEPB orders which required implementation of the entire negotiated contract at Central and mandated inclusion of the disputed provisions at the College. However, both institutions do resist the HEPB's imposition of attorney fees and costs.

The HEPB is an administrative agency created to enforce RCW 28B.16, the State Higher Education Personnel Law. *See* RCW 28B.16.060. Under this chapter the major terms and conditions of employment of classified employees of state institutions of higher education are regulated by the HEPB. *See* RCW 28B.16.100. However, certain personnel matters over which the institutions may lawfully exercise discretion are subject to collective bargaining. RCW 28B.16.100(12), .101. The collective bargaining agreements in these cases consolidated for review covered such matters as grievance procedures, vacation schedules, leaves for union activities and the like. Although some uncertainty exists as to the scope of collective bargaining rights of classified education employees (*see* Comment, *Public Employees' Bargaining Rights in Washington,* 14 Gonz. L. Rev. 197, 211–15 (1978)), the sole issue presently before the court concerns attorney fees.

RCW 28B.16.230 incorporates by reference certain unfair labor practice provisions of the Public Employees' Collective Bargaining Act, RCW 41.56. It provides in part:

> Each and every provision of RCW 41.56.140 through 41.56.190 shall be applicable to the state higher education personnel law and higher education personnel board . . .

RCW 41.56.140 enumerates certain unfair labor practices for public employers, one of which is refusal to engage in collective bargaining. Collective bargaining is defined under RCW 41.56.030(4) and WAC 251–04–020(10) as the mutual

obligation to confer and negotiate in good faith. Under RCW 41.56.160, the HEPB is directed to prevent unfair labor practices. The statute provides:

The [Board] *is empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders.* This power shall not be affected or impaired by any means of adjustment, mediation or conciliation in labor disputes that have been or may hereafter be established by law.

(Italics ours.)

 We must determine whether this statute permits the award of attorney fees in any instance and if so, whether an award is appropriate in these particular cases. Under the general rule followed in this state, recovery of attorney fees is permitted "only when authorized by a private agreement of the parties, a statute, or a recognized ground of equity." *Crane Towing, Inc. v. Gorton,* 89 Wn.2d 161, 176, 570 P.2d 428 (1977).

RCW 41.56.160 does not explicitly grant the power to award attorney fees and other litigation expenses. The legislature has on a number of occasions demonstrated the ability to clearly express itself in authorizing the award of attorney fees. *See, e.g.,* RCW 19.86.090, 19.91.110 and 60.08.050. Nevertheless, we find support for the WSFE's position in federal cases construing the remedial provision of the National Labor Relations Act, 29 U.S.C. § 160(c), to authorize awards of attorney fees to best effectuate the policies behind collective bargaining.

 Washington's Public Employees' Collective Bargaining Act, RCW 41.56, is substantially similar to the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169 (1976), (Act of July 5, 1935, Pub. L. No. 74–198, 49 Stat. 449, as amended). For example, *compare* RCW 41.56.030(4) *with* 29 U.S.C. § 158(d). *See generally* McClintock, Crump & Tuffley, *Washington's New Public Records Disclosure Act: Freedom of Information in Municipal Labor Law,* 11 Gonz. L. Rev. 13, 60–67 (1975). In construing state labor acts which appear to be based upon or are similar to the NLRA,

decisions under that act, while not controlling, are persuasive. *See Spokane Educ. Ass'n v. Barnes,* 83 Wn.2d 366, 375, 517 P.2d 1362 (1974); *In re Case E–368,* 65 Wn.2d 22, 28, 395 P.2d 503 (1964).

Under the NLRA, the authority to prevent unfair labor practices is vested in the National Labor Relations Board (NLRB). If it is determined that a person has engaged in an unfair labor practice, section 10(c) of the NLRA authorizes the NLRB to issue a cease and desist order and to "take such affirmative action . . . as will effectuate the policies of this subchapter." 29 U.S.C. § 160(c). In *International Union of Elec., Radio & Mach. Workers v. NLRB,* 426 F.2d 1243 (D.C. Cir.), *cert. denied sub nom. Tiidee Prods., Inc. v. International Union of Elec., Radio & Mach. Workers,* 400 U.S. 950, 27 L. Ed. 2d 256, 91 S. Ct. 239 (1970), the circuit court held that section 10(c) of the NLRA authorized the NLRB to award litigation expenses and remanded to the board for that determination.[2] The NLRB ordered charged parties to pay the litigation expenses of the charging party (complainant). *Tiidee Prods., Inc.* (I), 194 N.L.R.B. 1234 (1972). Examining the propriety of awarding such expenses, the NLRB has distinguished between "patently frivolous" defenses to unfair labor practice charges and defenses which are "debatable". In the latter instance, the NLRB has denied reimbursement of expenses as inappropriate. *Heck's, Inc.,* 215 N.L.R.B. Dec. 765 (1974); *Betra Mfg. Co.,* 233 N.L.R.B. Dec. 1126, 97 L.R.R.M. 1005 (1977). *See* C. Morris, *The Developing Labor Law* 269 (1977 Supp.) and 457–58 (Cum. Supp. 1971–75).

■ The HEPB directed payment of $6,558.97 in attorneys' fees in the Central case and a total of $4,588.97 in the College cases. Because the HEPB is the legislatively designated agency to enforce the unfair labor practice provisions

[2]The Supreme Court, however, has yet to endorse or reject the proposition. *See NLRB v. Food Store Employees' Local 347,* 417 U.S. 1, 8 n.9, 40 L. Ed. 2d 612, 94 S. Ct. 2074 (1974).

of the Higher Education Personnel Law, its determination as to remedies should be accorded considerable judicial deference. *See generally In re Case E–368, supra.* The relation of remedy to policy is peculiarly a matter of administrative competence. *In re Case E–368, supra* at 29. Nevertheless, the board's remedy is limited by the mandate of its statute, RCW 41.56.160. *See Cole v. State Util. & Transp. Comm'n,* 79 Wn.2d 302, 485 P.2d 71 (1971).

■ Under 41.56.160, the legislature has "empowered and directed" the HEPB to prevent unfair labor practices. We believe "remedial" action encompasses the power to award attorney fees under appropriate circumstances. We hold that RCW 41.56.160 is broad enough to permit a remedial order containing an award of litigation expenses when that is necessary to make the order effective. Such an allowance is not automatic, but should be reserved for cases in which a defense to the unfair labor practice charge can be characterized as frivolous or meritless. The term "meritless" has been defined as meaning groundless or without foundation. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 421, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978). Awards should not be permitted routinely, simply because the charging party prevails.[3]

Having concluded that under appropriate circumstances the HEPB has authority to enter orders awarding attorney fees, we look to the denial of the enforcement of the orders entered in these cases. The HEPB findings and conclusions should indicate the reason for the award. No reason for the imposition of litigation expenses was given by the HEPB in

---

[3]We note that before the HEPB conducts an unfair labor practice hearing, it makes an initial determination that the *charges* are not "frivolous" or "substantially without merit":

> Upon receipt of an unfair labor practice charge, the board or its designee shall conduct an investigation to determine whether or not the charges are frivolous or substantially without merit. If it is found that the charges are not frivolous or are not substantially without merit, a complaint shall be issued and a hearing scheduled . . .

WAC 251-14-080(3).

the instant cases. After careful examination of the record furnished on review, we find a basis for differentiation of the remedial orders.

The record made at HEPB–ULP No. 5 denotes rather arbitrary conduct on the part of the Central trustees. For example, the trustees were aware of the contract proposal put forth by its team of negotiators in August. As agreement was reached on particular provisions in the proposed contract, each paragraph was initialed by the negotiators to indicate such agreement. Negotiations continued for more than 2 months with intermittent interruptions to permit the representatives to confer with their respective principals. A number of articles agreed upon by the negotiating teams and ultimately rejected by the Board of Trustees, were originally proposed by the Central team.

October 31, 1975, after the proposed contract had been approved by both negotiating teams and ratified by the WFSE membership, the contract was submitted to the Central trustees. Only then did the trustees employ a private law firm as a consultant. Subsequently, Central rejected the proposed contract and sought renegotiation. For months the trustees failed to identify the contract items in dispute. When the items were identified, six had originally been proposed by Central's negotiating team. Such conduct neither comports with good faith bargaining nor serves as a basis for a meritorious defense to an unfair labor practice charge.

In contrast, the actions of the College appear quite defensible. Acting on advice of its counsel, the College took the position that article 4 of the agreement violated Const. art. 8, § 5 in granting paid leave time for certain employees to engage in specified union activities. Consequently, it refused to ratify article 4 in the one contract and gave notice that it would not comply with a similar provision in the other. The HEPB found the College committed an unfair labor practice in so doing. It stated that even if the College's counsel were correct, the College's obligation to bargain in good faith required it to attempt to reopen

negotiations and not take unilateral action. While the College does not challenge the findings of unfair labor practices in either ULP No. 9 or No. 12, it does resist the imposition against it of WFSE's attorney fees and other litigation expenses.

Under our holding above, the fact that the College is ultimately found to have committed an unfair labor practice does not, per se, authorize imposition of attorney fees against it; rather, the purported defense to the unfair labor practice charge must be considered. Only if that defense can be characterized as frivolous or meritless should litigation expenses be considered as part of the remedial order. In this instance, we cannot characterize College's defense as without merit.

The conduct of the College in both ULP No. 9 and No. 12 can be said to have been based on advice received from counsel assigned to it by the Attorney General of the State of Washington. A new chief administrative officer and other administrative personnel assumed duties at the College when negotiations between WFSE and the College had substantially concluded in ULP No. 12. The College's new president consulted the assigned assistant attorney general about the terms of the collective bargaining agreement.

Regardless of whether one agrees with the tenor of the advice given by the assistant attorney general, in this instance the College should not be subject to litigation expenses for acting on that advice in good faith.

The HEPB took the position that the College should have sought legal advice elsewhere or at least obtained a second opinion. In hindsight, the College may well agree, but its failure to seek additional advice at the time does not constitute so egregious an oversight as to make the College's reliance on its counsel's advice a frivolous defense to an unfair labor practice charge. At the very least, the College's actions must be considered as having been honestly debatable at the time. There is no indication that the president or the board had reason to question the advice given. As a matter of fact, counsel assigned to the College was also

assigned to the Yakima Valley Community College. Generally, departments, boards and other governmental entities of this state are entitled to rely on legal advice from assigned attorneys general.

In this instance, we believe the College formulated its position based on the honest belief that the collective bargaining provision it refused to ratify in one instance and to which it gave notice of refusal to comply in another was unconstitutional. That being so, further negotiation on that issue could well be viewed by the College as a useless procedure.

Finally, we are unable to conclude that awarding litigation expenses in ULP No. 9 and No. 12 would serve the remedial function of preventing future unfair labor practices with an employee bargaining unit in similar circumstances. Such an award could not and should not deter the College from seeking legal advice from its assigned assistant attorney general and acting in reliance on such advice.

Since a trial court's order will be upheld if there is within the pleadings and evidence adduced a sufficient basis to support it, the order of the trial court in Spokane Community College is affirmed.

In Central Washington University, the order of the trial court is reversed and remanded for further proceedings consistent herewith.

UTTER, C.J., and STAFFORD, WRIGHT, HOROWITZ, and WILLIAMS, JJ., concur.

DOLLIVER, J. (concurring in part; dissenting in part)—I dissent to that portion of the majority opinion which affirms the trial court's order in the Spokane Community College case. I agree with the majority's position that the Higher Education Personnel Board (HEPB) is empowered to award attorneys' fees in unfair labor practice actions and would uphold the awards in both of these cases.

This court has repeatedly held that it will not interfere with a decision of an administrative agency absent arbitrary and capricious or clearly erroneous action. *In re Case E–368*, 65 Wn.2d 22, 395 P.2d 503 (1964); *Portage Bay–Roanoke Park Community Council v. Shorelines Hearings Bd.*, 92 Wn.2d 1, 8, 593 P.2d 151 (1979). The action of the HEPB was neither.

The reasons given by the majority for upholding the trial court in the Spokane Community College case are that (1) the "College took the position that article 4 of the agreement violated Const. art. 8, § 5 in granting paid leave time for certain employees to engage in specified union activities"; (2) "Only if [the above] defense can be characterized as frivolous or meritless should litigation expenses be considered as part of the remedial order"; and (3) "In this instance, we cannot characterize College's defense as without merit", but as rather "honestly debatable".

But the issue before us is not the merit of the "honest debate" as to the constitutionality of an article of the union contract or whether the defense of the position of the College was frivolous or without merit. Rather, the issue is whether the district engaged in an unfair labor practice. It may be there was an "honest debate" as to the constitutionality of certain provisions of the collective bargaining agreements. But the way for the district to resolve the "honest debate" was not by a refusal to bargain in good faith. As the HEPB found in Case No. 9:

> If, *for any reason,* the College, through its Board, found itself unable to ratify the negotiated contract, it was under an official obligation to seek a reopening of negotiations for the purpose of finding a basis for mutual agreement. Its failure to do so does violence to the mutual obligation to confer and bargain in good faith and, for this reason, constitutes an unfair labor practice.

(italics mine) and in Case No. 12:

> Article XVII of the agreement *requires* that declaratory relief be sought from an appropriate forum prior to

assertion of the invalidity of one of the clauses in the agreement as a defense to its enforcement.

(Italics mine.)

The HEPB found in both cases that the action of the district constituted an unfair labor practice. If, as here, the remedy fashioned by the administrative board is consistent with its authority, a party to a collective bargaining negotiation should not be able to avoid the consequences of engaging in unfair labor practices simply by stating that it was acting on advice of counsel and there was an "honest debate" as to the validity of a portion of the negotiated contract. This escape hatch is nowhere found or contemplated in the Public Employees' Collective Bargaining Act, RCW 41.56. *See* particularly RCW 41.56.140–.150. To adopt the position of the majority is to strike at the heart of the collective bargaining process.

I find no abuse of the HEPB discretion in the award of attorneys' fees in the Spokane Community College case and would reverse the trial court's dismissal of the action by the union to enforce that award.

ROSELLINI and BRACHTENBACH, JJ., concur with DOLLIVER, J.