[No. 4968–6–II. Division Two. May 14, 1982.]

LEWIS COUNTY, *Respondent,* v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, ET AL, *Appellants.*

854

*Kenneth O. Eikenberry, Attorney General, Richard A. Heath, Assistant,* and *Pamela Cipolla,* for appellants.

*John Panesko, Jr., Prosecuting Attorney, Eugene Butler, Chief Civil Deputy,* and *Nelson Hunt, Deputy,* for respondent.

PETRIE, J.—Local No. 1341C of the Washington State

Council of County and City Employees (Union), and the Public Employment Relations Commission (PERC) appeal an order of the trial court which reversed two PERC orders (Decision Nos. 644 and 644–A PECB) directing Lewis County to bargain with Local 1341C, to cease and desist from unfair labor practices and awarding attorney fees to the Union. The trial court decision also had the practical effect of upsetting an earlier PERC order (Decision No. 368 PECB) which certified the Union as bargaining representative for a group of courthouse employees in Lewis County.

Review of the PERC order was sought by Lewis County under provision of the state administrative procedures act, RCW 34.04.130. Local 1341C counterclaimed for enforcement of the PERC order under RCW 41.56.190, Public Employees' Collective Bargaining Act. We reverse the trial court, and reinstate Decision Nos. 644 and 644–A PECB, because the County was (1) collaterally estopped from attacking the prior certification order and asserting it as a defense to the unfair labor practice charge, and (2) the trial court erred in going behind the immediate administrative order on review.

The County contends here that the certification order did not bind it because Lewis County itself is not a public employer. It urges that the Board of Commissioners and each elected official in the County (Assessor, Auditor, Clerk, Treasurer, District Court Judge) constitutes a separate employer, and that PERC had no jurisdiction over the elected officials. This position was asserted as a defense to the unfair labor practice charge and gave rise to the review sought in the superior court. Background on the bargaining history between the County and the Union is necessary for an understanding of the instant dispute and the issues involved.

On November 30, 1977, the Union wrote the Lewis County Board of Commissioners stating that a majority of courthouse employees had asked the Union to represent them and requesting that the Commissioners join with the Union in signing a Consent Election Agreement and peti-

tioning PERC for an election. The election agreement described the proposed bargaining unit as "Courthouse employees: Treasurer, Assessors, Auditors, Maintenance, Clerks, District Court, Car Pool" as included employees. Excluded were "Commissioners Office and elected officials and Juvenile Court." On December 2, 1977, the Commissioners responded in writing declining to sign the Consent Election Agreement, explaining

> One of the reasons for declining is that the County does not feel that the proposed bargaining unit represents a sufficient number of employees. A unit composed of all eligible courthouse employees, including all departments, would be more appropriate.

On January 3, 1978 the Commissioners withdrew their objections to the size of the unit proposed in the Union's petition and forwarded a copy of the Consent Election Agreement to PERC, thereby stipulating to the appropriateness of the unit for election purposes.

On January 23, 1978 the Union won the representation election to become the bargaining representative for the unit of courthouse employees. Subsequent to the election, the County objected to the election by filing a document labeled "Notice of Protest and Objection to Certification Election." The objections in summary were that "eighteen [eligible voters] did not vote either because of illness, confusion as to the effects of abstention or inadvertance [sic] due to the pressure of their employment on that particular day." The County argued that the outcome would have been different if the nonvoters had exercised their franchise. PERC, on March 7, 1978, in Decision No. 368 PECB, dismissed the County's objections and certified the bargaining unit as "an appropriate unit for the purposes of collective bargaining within the meaning of RCW 41.56-.060."

The certified unit was described as:

> All Lewis County Courthouse employees in the Treasurer's office, Assessor's office, Auditor's office, Clerk's office, District Court, Maintenance and Car Pool; excluding the

Commissioners' office, elected officials and Juvenile Court employees.

The County never sought judicial review of that certification decision (No. 368). Furthermore, the County never raised the issue of "proper employer" at any time before the election, in its objections to the election, or during the certification process.

Subsequent to Decision No. 368, the parties were told to commence bargaining. No bargaining occurred between March 1978 and February 1979, chiefly because of two intervening unfair labor practice charges. The County's unfair labor practice complaint against the Union was dismissed as baseless in September 1978. Decision No. 464–A PECB. In February 1979, PERC upheld the Union's complaint against the County charging a refusal to bargain, Decision No. 556–A PECB, but stayed enforcement of the order pending the resolution of the instant case, No. 644.

In early 1979 the County adopted for the first time the positions (1) that only the Board of Commissioners could bargain on wage–related matters, and (2) that each independent elected official (Assessor, etc.) was a separate employer who controlled other working conditions. The County's newborn defense to its obligations to bargain was that the certification in Decision No. 368 bound only the Commissioners, and that the Assessor, et al, were separate public employers not bound by the certification and with no duty to bargain. Because the Commissioners, on behalf of the County, would bargain only on wage matters, the Union in February 1979 filed a second unfair labor practice complaint charging the County with refusal to bargain, thus giving rise to the instant administrative order under review.

PERC notified the parties that a complaint would issue and that the matter would be decided on an agreed statement of facts. In May 1979 PERC issued an order finding an unfair labor practice on the part of the County by its continued refusal to bargain in good faith, Decision No. 644 PECB, and ordered the County to pay the Union's attorney fees as an extraordinary remedy. Decision No. 644–A

PECB. PERC based its decision on the following: (1) Lewis County is a public employer within the meaning of RCW 41.56.030(1);[1] (2) the unit for collective bargaining described in Decision No. 368 PECB was agreed upon by the County, was not offensive to RCW 41.56.060, and, per the stipulation to the unit, bound the County; (3) no petition for judicial review of the certification of the representative having been sought, the certification was a final order and no longer subject to collateral attack; and (4) "collective bargaining" as defined in RCW 41.56.030(4) was not limited to wage–related matters but included hours and working conditions. PERC found (1) that the County's attempted limitation of bargaining to wages and wage–related matters was unlawful[2] and (2) that because of the continued course of conduct and the yearlong delay of bargaining, a cease and desist order would be inadequate to effectuate the remedial purposes of the collective bargaining act. Therefore, in Decision No. 644–A, PERC imposed the extraordinary remedy of ordering payment of attorney fees in the sum of $1,388.75.

The County petitioned the Superior Court for Lewis County for review of PERC's decisions in Nos. 644 and 644–A pursuant to RCW 34.04.130. Pursuant to subsection 4 of that statute, PERC certified the record in Nos. 644 and

---

[1] "'Public employer' means any officer, board, commission, council, or other person or body acting on behalf of any public body governed by this chapter as designated by RCW 41.56.020, or any subdivision of such public body." RCW 41.56.030(1).

[2] This holding by PERC constituted a rejection of the County's defense of "dual employer" or "separate employer." PERC pointed out to the County that the differing needs of department heads and separately elected officials could be addressed satisfactorily within the certified bargaining structure.

The fact that the county employees work for different elected officials is immaterial. While the employees of one such official might constitute an appropriate unit, bargaining units are not fragmented into units within units. *The differing requirements of assignments under the various elected officials can be accommodated easily by appropriate consultation and adaption of* procedures within the employer.

(Italics ours.) Decision No. 644 PECB.

644-A, the instant unfair labor practice charge, to the Superior Court. Through discovery efforts, the County sought certification of the PERC's record in Decision No. 368, the union certification case, and the two earlier unfair labor practice cases. PERC and the Union resisted such discovery and supplementation of the agency record as being beyond the scope of the immediate agency decision on review, No. 644. The trial court disallowed the objections. Accordingly the additional record in the earlier agency cases was subsequently supplied to the Superior Court.

The Superior Court considered the record in No. 644, the instant unfair labor practice, and the earlier certification case, No. 368, overturned both PERC determinations and held (1) there was no refusal to bargain, and (2) the certification was not binding on the elected officials. The trial court's reversal of Decision No. 644 was based on the following factors as it viewed them: (1) PERC had denied the independently elected officials due process of law when it found they were bound by the certification and obligated to bargain; (2) PERC's denial of a "separate employer" status to the elected officials was an error of law; (3) PERC exceeded its jurisdiction in the award of attorney fees; and (4) the decision in No. 644 was clearly erroneous in view of the agency's records of proceedings leading to Decisions Nos. 368 and 644.

The following issues are presented for our review. (1) Whether the Superior Court erred when it did not confine its review of Decision No. 644 to the immediate record certified by PERC but, instead, considered earlier agency determinations and record; (2) whether Lewis County was collaterally estopped from attacking the earlier certification decision as a defense to the unfair labor practice and, if not, whether the designation of "Lewis County" as employer was proper; and (3) whether PERC's award of attorney fees to the Union was a proper exercise of agency remedial power.

We turn first to the determination of what constituted

the proper record for review by the Superior Court. PERC and the Union contend that the only record properly before the Superior Court was the record in No. 644, the instant unfair labor practice charge under review, and that the trial court erred in considering the record of earlier agency determinations. The County contends that consideration of the earlier agency record was proper because PERC, in Decision No. 644, considered matters in addition to the agreed facts.

RCW 34.04.130(5)[3] provides that the review by the superior court of an agency determination *"shall be confined to the record"*. RCW 34.04.130(4), in turn, provides in part, "the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review". The "proceeding under review" here was Decision No. 644. Nevertheless, as an exception to the limited record rule when there are "alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court." RCW 34.04-.130(5).

The general standard for the record on review is set forth in *Ault v. State Highway Comm'n,* 77 Wn.2d 376, 462 P.2d 546 (1969). A review of the order or decision of an administrative tribunal must be heard on, *and limited to,* the record before the agency, as prepared and certified by the agency. *Ault,* 77 Wn.2d at 378. The record certified by PERC was confined to No. 644, the March 1979 unfair labor practice charge. At best, PERC's references in No. 644 to earlier decisions were simply attempts to relate the unfortunate bargaining history between the County and the Union. These references cannot be read as evidence that PERC considered substantive matters within the earlier

---

[3]RCW 34.04.130(5) provides:

"(5) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court shall, upon request, hear oral argument and receive written briefs."

records unrelated to the refusal to bargain charge against the County.

In the case at bench, the trial court ordered the additional record upon a determination of the originally certified record's incompleteness. Furthermore, it is evident that in concluding the certification was defective because PERC never had jurisdiction over the independently elected County officials, the trial court considered more than the record in Decision No. 644. The presentation of additional evidence at the court level is not permitted in a judicial review of an agency decision where it is only asserted that the record is incomplete. *Ault,* 77 Wn.2d at 379. The record of an administrative proceeding is adequate for judicial review, when, despite deficiencies, it shows substantial evidence supporting the determination made. *Bennett v. Board of Adjustment,* 29 Wn. App. 753, 631 P.2d 3 (1981).

At trial the County attacked only the completeness of the record. It never urged that the record be expanded because of specific charges of irregularities in agency procedure. Because of the absence of a meritorious allegation of irregularities, *Valley View Convalescent Home v. Department of Social & Health Servs.,* 24 Wn. App. 192, 599 P.2d 1313 (1979), the trial court should have confined its review of the issues to the record certified by PERC in Decision No. 644. The record was extended to include Decision No. 368, the certification decision, and the two earlier unfair labor practice charges. Such extension was clearly improper.

We turn next to the question of whether the County, as a defense to the unfair labor practice charge, can now attack the earlier certification decision (Decision No. 368). The County contends the certification is improper because the County, as an entity, cannot be the employer; only the separately elected officials and the Board of Commissioners can fulfill that role. The Union contends the County is collaterally estopped from attacking the certification of bargaining units because it never appealed the certification decision when it was issued.

The Union's argument essentially is that the certifi-

cation decision (Decision No. 368) was a final agency order, and that the County in 1978 should have sought judicial review under RCW 34.04.130. An administrative decision is "final" for purposes of judicial review under RCW 34.04-.130(1) when it denies a right, imposes an obligation, or fixes a legal relationship between the parties. *Renton Educ. Ass'n v. State Pub. Employment Relations Comm'n,* 24 Wn. App. 476, 603 P.2d 1271 (1979), *review denied,* 93 Wn.2d 1025 (1980); *Department of Ecology v. Kirkland,* 84 Wn.2d 25, 523 P.2d 1181 (1974). An administrative determination is not a final order where it is a mere preliminary step in the administrative process, but it becomes final when a legal relationship is subsequently fixed upon "consummation of the administrative process", *Department of Ecology v. Kirkland,* 84 Wn.2d at 30, citing *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113, 92 L. Ed. 568, 68 S. Ct. 431 (1948).

█ Here there were no more preliminary steps to the certification process. After the representation election, which does constitute a preliminary step, *Renton Educ. Ass'n,* 24 Wn. App. at 479, all that remained to "consummate" the administrative process was the entry of the certification order by PERC.

> [I]t is the certification of the exclusive bargaining representative following an election that is the final administrative decision which is judicially reviewable under the administrative procedures act . . .

*Renton Educ. Ass'n,* 24 Wn. App. at 479–80.

Additionally, we conclude certification under RCW 41.56.080 is a "final decision in a contested case" for purposes of RCW 34.04.130 because the order of certification fixes a legal relationship between the parties and imposes statutory obligations on each party. RCW 41.56.030(4). Certification fixes the scope of the bargaining unit and determines those employees with which the employer has an obligation to bargain. By necessary implication, certification also determines the "employer." The required bargaining relationship which results from certification

consummates an administrative process and gives rise to a right of judicial review. Therefore, it is a final agency order. *Accord, School Bd. v. Florida Pub. Employees Relations Comm'n,* 333 So. 2d 95 (Fla. Dist. Ct. App. 1976); *Panama City v. Florida Pub. Employees Relations Comm'n,* 333 So. 2d 470 (Fla. Dist. Ct. App. 1976) (certification following election constitutes final action from which a petition for judicial review may be filed); *West Allis v. Wisconsin Employment Relations Comm'n,* 72 Wis. 2d 268, 274, 240 N.W.2d 416 (1976) ("[t]he statutory provision for appeal and court review is only as to findings made following the certification of the results of the election ordered and held.")

 The only remaining question is whether the aggrieved party's failure to pursue judicial review from the final agency order cuts off its ability to attack the certification in a later proceeding. Here we note that the County filed objections to the election (though it never challenged the employer designation) but never sought judicial review of the certification itself. RCW 34.04.130(2) specifically provides that, when judicial review of a final agency decision is sought, the petition for review must be filed within 30 days after the service of the final decision of the agency. The trial court only became involved in reviewing the certification because the County, a year later, chose to raise it as a defense. The time for the County to have challenged the "proper employer" designation was when the certification order issued and the bargaining relationship was finalized. The County did not do so here. It is now estopped from attacking the certification.

We are urged by the County to consider the practice under the National Labor Relations Act which allows a charged party to attack certification or scope of bargaining as a defense to the unfair labor practice. We note that, unlike the National Labor Relations Board which functions under its own procedures, PERC is subject to the state administrative procedures act. While we recognize that authority developed under the NLRA has been, and will

continue to be, helpful in the development of public sector law, we also note that the NLRA and its procedures are not automatically appropriate to the public setting. *Municipality of Metro Seattle v. Department of Labor & Indus.*, 88 Wn.2d 925, 568 P.2d 775 (1977).

Florida courts, which have held that certification is a final order subject to judicial review, *School Board* and *Panama City,* have also held that an attack on certification is not permitted as a defense to an unfair labor practice when there is a failure to raise it by earlier judicial review. *School Bd. v. State Pub. Employees Relations Comm'n,* 354 So. 2d 909 (Fla. Dist. Ct. App. 1978). *But see Klamath County v. Laborers Int'l Local 915,* 21 Or. App. 281, 534 P.2d 1169 (1975) (holding that the certification can be raised as a defense, but also finding that under the definitions of Oregon's administrative procedures act certification was not a final order). Under Washington's statutory scheme, the Florida rule appears to be the better rule. Requiring an immediate review of a certification order is consistent with the remedial function and purposes, and statutory obligations imposed on employers' and employees' representatives under the Public Employees' Collective Bargaining Act.

Despite our holding above on the invalidity of the County's defense, we are constrained to offer the County some guidance so it can now proceed to bargain in good faith. In its brief and at oral argument, Lewis County argued that the critical issue was the impropriety of the designation of "Lewis County" as employer. The County argues that there are in reality six *separate* employers, the County Commissioners and the five independently elected officials. Lewis County does concede that the Commissioners have power to bargain over wages and wage–related matters for *all* employees in the certified unit. The County's challenge to the instant bargaining relationship is that each separate employer, *i.e.,* each independently elected official, only has authority to bargain over hours and working conditions for those employees in his department because the working

conditions are unique to each employer–employee group. Accordingly, the County contends the six separate bargaining units are necessary.

In response to the County's contention that Lewis County, the entity itself, is not a proper employer, we note the goal of collective bargaining is not *perfect* bargaining units, but appropriate bargaining units. RCW 41.56.060. Bargaining must proceed within the bargaining relationship as it now stands. The different concerns of the Commissioners and elected officials could be accommodated within the present bargaining relationship.[4]

Neither PERC nor the Union contends that it has any authority to dictate whom the County may choose as its (the employer's) bargaining representative. Indeed, any such attempted influence by the Union would subject it to a charge of having committed an unfair labor practice. RCW 41.56.150(1). The County could choose a single representative or multiple representatives. The burden is on the Commissioners and the independently elected officials to consult with each other as to concerns over employee working conditions so that the collective opinion of county management can be effectively formulated and then communicated to the employees' representative at the bargaining table.

Finally, we turn to the question of the propriety of PERC's award of attorney fees (Decision No. 644–A) to the Union. The trial court reversed the award finding that PERC exceeded its jurisdiction in awarding attorney fees. The general rule is that attorney fees may only be awarded when authorized by agreement of the parties, by a statute, or pursuant to a recognized ground of equity. *Crane Towing, Inc. v. Gorton,* 89 Wn.2d 161, 570 P.2d 428, 97 A.L.R.3d 482 (1977). RCW 41.56.160, which authorizes PERC to prevent unfair labor practices, also authorizes an award of attorney fees in a remedial order when it is necessary to make the order effective and if the defense to the

---

[4]See footnote 2.

unfair labor practice is frivolous or meritless. *State ex rel. Wash. Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 605 P.2d 1252 (1980).

The County urges primarily that despite the holding of *Board of Trustees,* the award was improper because its defense to the unfair labor practice was not frivolous. *Board of Trustees* stresses that attorney fees are available only when PERC believes that such an award is necessary to make its order effective. *Board of Trustees,* 93 Wn.2d at 69. An award is not to be automatic.

In *Board of Trustees,* the Supreme Court differentiated between the two cases involved, Central Washington University and Spokane Community College, and found that only Central's defense could be characterized as frivolous. Central's conduct was characterized by the court as "arbitrary" and "neither comports with good faith bargaining nor serves as a basis for a meritorious defense to an unfair labor practice charge." *Board of Trustees,* 93 Wn.2d at 70. Central, after months of negotiation culminating in an agreement, decided to strike certain provisions of the contract, many which they had originally proposed. The Supreme Court determined this conduct was not faithful to good faith bargaining and that a debatable or honest defense could not arise out of the underlying course of conduct. Therefore the Higher Education Personnel Board's award of attorney fees was reinstated. In contrast, Spokane College's conduct, while unfair, was not as egregious. The College relied on legal advice from the Attorney General that a certain provision of the negotiated conduct was violative of the the state constitution. The College refused to ratify or follow the suspect sections but ratified the remainder of the contract. The Supreme Court found this conduct defensible.

The case at bench is much closer to the circumstances of the Central case. We find that the merits of the defense have a direct relation to the underlying course of conduct. A pattern of bad faith bargaining may preclude a "debatable" defense and allow PERC to award attorney fees if

appropriate. The novelty or "debatability" of a party's legal defense to an unfair labor practice should not shield the charged party from imposition of the obligation to pay the charging party's attorney fees when it is clear that the history of underlying conduct evidenced a patent disregard for the statutory mandate to engage in good faith negotiations. RCW 41.56.030(4), .100.

Here, it is clear that Lewis County sought to evade its legal duty to bargain over a period of 2 years. It should be noted that the County's tardily asserted defense of "separate employers" was not born until after a second unfair labor practice had been filed against the County. In neither its initial objections to the election nor as a defense to the first unfair labor practice did the County assert the defense argued here.[5]

Disregarding whatever legal merit the defense might actually bear, the course of conduct from which it arose was not faithful to the statutory duty to bargain in good faith. This underlying course of conduct provides sufficient grounds for the award of $1,388.75 in legal expenses and represents an "appropriate remedial order" authorized by RCW 41.56.160 and *Board of Trustees*. The imposition of fees by PERC was not automatic, *Board of Trustees*, 93 Wn.2d at 69, but represented a well reasoned and restrained use of agency remedial powers. The fee award was imposed only after prior attempts to reconcile Lewis County to its bargaining duty had proved futile. The remedy was proper to curtail Lewis County's dilatory tactics and prevent their recurrence, *Skold v. Johnson*, 29 Wn. App. 541, 551, 630 P.2d 456 (1981), and was necessary to make the cease and desist order effective. *Board of Trustees*, 93 Wn.2d at 69. We cannot say that PERC abused its discretion in ordering payment of attorney fees.

Accordingly, the trial court's order is reversed. The

---

[5]Indeed, in the initial objections the County objected to the fact that the unit was not broad enough. Its signature on the Consent Election Agreement constituted a stipulation to the appropriateness of the unit.

Union's petition for enforcement pursuant to RCW 41.56-.190 is granted and PERC's decisions in Nos. 644 and 644–A are affirmed.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied June 15, 1982.

Review denied by Supreme Court September 24, 1982.