## In re Central Vermont Railway, Inc.

[565 A.2d 1358]

No. 88-612

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed August 4, 1989

*Peter M. Nowlan*, Randolph, for Appellant.

*Emily B. Tartter* of *Paterson & Walke, P.C.*, Montpelier, for Appellee.

**Allen, C.J.** The Town of Braintree appeals from a superior court order reversing an order of the Transportation Board (Board) on grounds that the Board order was not final. We reverse and remand for consideration of the merits.

The history and background of this litigation is discussed in our decision on an earlier appeal in the same cause, 148 Vt. 177, 530 A.2d 579 (1987). The Town in that matter had appealed a 1985 Board order issued pursuant to 30 V.S.A. § 1379 allocating the annual maintenance costs of a flashing signal light at a railroad grade crossing in the Town known as "Abel's Crossing." The superior court affirmed the Board order, and we vacated the superior court order and remanded the matter to the Board because the absence of a final order had deprived the superior court of jurisdiction over the appeal. Central to our decision was the absence of findings by the Board on the annual maintenance costs of the crossing. We said:

> The ultimate issue being litigated by the parties is whether the actual amount they will be required to contribute toward maintenance of the crossing is "just and equitable." Appellate review of this question is hampered substantially by the absence of an established annual maintenance cost.

148 Vt. at 179, 530 A.2d at 581. On remand, a hearing officer's report was submitted to the Board recommending that it order a cost allocation consistent with its previous decision, i.e., an even division of the maintenance costs between the Town and the Railway. There was no finding in the hearing officer's report on annual maintenance costs, the missing element that deprived the trial court of jurisdiction in the earlier appeal. On April 21, 1988, the Board issued a second order, essentially adopting the recommendations of the hearing officer and mandating an even division of maintenance costs for Abel's Crossing, with an annual limit for the Town of $1200, again without a specific finding as to the total amount of those costs. The Town appealed, and the Railway cross-appealed. The superior court, relying on our decision in the earlier appeal, reversed the Board order, concluding that it suffered from the same infirmity as its predecessor, namely, that it made no finding as to annual maintenance costs. The Town's appeal to this Court followed.

The essence of the Town's argument on appeal is that the Board's order was final, and the superior court should have reversed it on the merits. The Railway differs with the Town on the merits of the 1988 Board order, but agrees that the order was final and argues that the trial court should have considered and affirmed it. Central to the difference between the 1985 and 1988 orders, according to the Town, is that the earlier version directed the parties "to agree on a computation of the annual maintenance costs to be used as a base for the allocation [of such costs]... ," and to submit this agreement to the Board for approval. It further provided that "[i]n the event that the agreement [on the base annual cost] is not received by the board for approval on or before July 1, 1985, the board shall compute the annual cost of signal maintenance for purposes of the allocation of [such] costs." By contrast, argues the Town, the 1988 Board order contemplated no further proceedings by the Board. It provided:

> 1. The Town shall pay fifty percent of the direct electrical costs of operation of signals, commencing *August 15, 1983,* upon presentation to the Town of appropriate documentation.
> 2. The Town shall pay fifty percent of the annual, direct and actual, costs of maintenance of the signals at Abel's Crossing after the date of the Board's Order upon presentation of a statement verified by CV's chief financial

officer. CV shall employ generally accepted recordkeeping and accounting principles on which it bases its statement which shall be subject to review and audit of the Town. In no event shall the Town's share exceed $1,200.00.

(Emphasis in original.) The 1988 order also allowed either party to petition the Board for relief in the event of substantial disagreement or change of circumstances warranting review of the order.

Though the 1988 order did not set a sum certain as an established total annual maintenance cost, a requirement that may have appeared implicit in our earlier decision, 148 Vt. at 179, 530 A.2d at 581, we hold that the order was nevertheless final. The want of finality in the 1985 order arose from both the absence of a finding on established annual maintenance costs *and* the Board's undertaking to determine those costs at some later time if necessary. The Board assumed the duty of arriving at a final maintenance figure, but that task was as yet unperformed when the appeal was taken, and this Court had no possible way to determine on appeal whether the Board would, later in the proceeding, set a total maintenance figure that was "just and equitable." The 1985 order would have become final only after the Board's determination of total expenses, its concluding act in the matter. See *Lewis County v. Public Employment Relations Comm'n*, 31 Wash. App. 853, 862, 644 P.2d 1231, 1236–37 (1982); see also *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967); *Roosevelt Campobello Int'l Park Comm'n v. United States Environmental Protection Agency*, 684 F.2d 1034, 1039–40 (1st Cir. 1982); see generally 4 K. Davis, Administrative Law Treatise ch. 25 (2d ed. 1983). Consequently, we were compelled by the terms of the Board's own procedure to deem its 1985 order interlocutory.

■■ In the present case, by contrast, the Board's final action has been taken. Its order provides no further steps in the proceeding before it, though it does state that a *new* petition for relief might be filed by either party in the event of disagreement. Though the difference between an incomplete administrative proceeding and one that is complete, but subject to a petition for relief, may seem slight in some contexts, the difference is significant when the issue is finality

for purposes of appeal. Interim orders are subject to alteration prior to issuance of a final order, and unless an interlocutory appeal lies from such interim order, appellate intervention is neither needed nor available until a final order issues. Compare *Walker Creek Homeowners Ass'n v. Texas Dep't of Health Resources*, 581 S.W.2d 196, 198 (Tex. Ct. App. 1979) (order not final and not reviewable), with *Big Three Industries, Inc. v. Railroad Comm'n of Texas*, 618 S.W.2d 543, 547–48 (Tex. 1981) (order final and appealable).* The 1988 order did impose binding obligations on the parties and was not subject to refinement or modification by the Board. It established a process for determining a just and equitable division between the parties without further reference to, or appearance before, the Board. Though the order does not specify a sum certain, it was not the intention in our earlier decision to mandate an order containing a sum certain, but rather to require either a determination of a final figure by the Board or the establishment by the Board of a clear process by which such figure could be determined without further recourse to the Board. The Board's order performed the latter purpose and hence was final.

Whether or not the 1988 order conformed to the require-ments of 30 V.S.A. § 1379 is an issue for the superior court to determine on the merits of this appeal, a question that it did not reach because of its conclusion that the Board's order was not final.

While the Town has requested that this Court proceed to entertain the appeal on the merits, we would rarely elect to bypass the trial court and decide the merits of a case without a lower court decision. See *Noble v. Delaware & Hudson Ry.*, 139 Vt. 47, 50, 421 A.2d 1301, 1303 (1980).

---

* The court in *Big Three Industries* distinguished *Walker Creek*, where "the agency order granting a permit for operation of a sanitary landfill specified that it did not become operational until one of the parties submitted further plans with that department and those were approved. The Court of Civil Appeals held that this was more than a mere 'self-reporting requirement' and the order was not yet final." 618 S.W.2d at 547. The "further plans" are analogous to the future determination of the total maintenance costs in the 1985 order.

*Reversed and remanded for review on the merits in accordance with this opinion.*