# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HERITAGE GROVE, a Washington not-for-profit corporation; PRESTIGE CARE, INC., a Washington corporation; CARE CENTER (YAKIMA), INC., a Washington corporation; and YAKIMA VALLEY VENTURES, LLC, a Washington limited liability company. | No. 52393-1-II |
| Appellants, | |
| v. | |
| DEPARTMENT OF HEALTH; STATE OF WASHINGTON and SELAH CARE AND REHABILITATION; LANDMARK CARE AND REHABILITATION; EMERALD CARE; GOOD SAMARITAN HEALTH CARE CENTER; WILLOW SPRINGS CARE AND REHABILITATION; CRESCENT HEALTH CARE, INC.; and SUMMITVIEW HEALTHCARE CENTER, | PUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Heritage Grove submitted a certificate of need (CN) application to the Department of Health (DOH). DOH initially approved the application, but a group of nursing homes in Yakima (collectively Respondent Nursing Homes[1]) administratively challenged the CN. At the conclusion of the administrative proceedings, DOH issued findings of fact, conclusions of

---

[1] Selah Care and Rehabilitation, Landmark Care and Rehabilitation, Emerald Care, Good Samaritan Health Care Center, Willow Springs Care and Rehabilitation, Crescent Health Care, Inc., and Summitview Healthcare Center.

law, and final order (Final Order) denying it. Heritage Grove and others[2] petitioned for judicial review of the Final Order. The superior court affirmed the Final Order and also dismissed the petition for judicial review on mootness grounds.

Concluding that the case is moot, we affirm.

FACTS

I.      OVERVIEW OF THE CN APPLICATION PROCESS

Washington created the CN program (the Program) to "promote, maintain, and assure the health of all citizens in the state, provide accessible health services, health manpower, health facilities, and other resources while controlling increases in costs, and recognize prevention as a high priority in health programs." RCW 70.38.015(1). DOH administers the Program. RCW 70.38.105(1). Health care providers may open certain health care facilities, including nursing homes, only after receiving a CN from DOH. RCW 70.38.025(6), .105(4)(a).

In determining whether to issue a CN for a new health care facility, DOH usually considers the following four criteria: (1) need, (2) financial feasibility, (3) structure and process of care, and (4) cost containment. WAC 246-310-200(1); *see* WAC 246-310-210 to -240. However, RCW 70.38.115(13)(b) provides that "[w]hen an entire nursing home ceases operation, the licensee or any other party who has secured an interest in the beds may reserve his or her interest in the beds for eight years or until a [CN] to replace them is issued, whichever occurs first." This procedure is referred to as "banking" beds. The statute and regulations then allow the party who has banked their beds to "unbank" them in a new facility. For providers filing a CN application seeking to unbank beds, assuming certain conditions are met including that the new beds are located in the

---

[2] Numerous entities jointly filed the petition for judicial review: Heritage Grove, Prestige Care, Inc., Care Center (Yakima), Inc., and Yakima Valley Ventures, LLC.

same planning area where they were before they were banked, the applicant does not need to prove the "need" criterion, WAC 246-310-210, in their CN application. RCW 70.38.115(13)(b); WAC 246-310-396.

II.    HERITAGE GROVE'S APPLICATION

Until October 15, 2009, Heritage Grove operated a 97-bed nursing home facility in Yakima County. The facility closed, and Heritage Grove sent a letter to DOH requesting to bank its beds. DOH granted Heritage Grove's request and stated that Heritage Grove's reservation of the beds would expire on October 15, 2017, unless it issued a CN before then.

In December 2014, Heritage Grove submitted an application for a CN. Heritage Grove sought to build a facility focused on post-acute care and sought to unbank its 97 beds. The application stated that the facility would open as Heritage Grove but would be managed by Prestige Care, Inc. It also stated that Prestige had "a Purchase and Sale Agreement with the current owners of the property . . . [which] allow[ed] for the purchase to be finalized once certain contingencies [were] met, including the approval of the [CN] application." Admin. Record (AR) at 2494.

After one round of screening questions, the Program began its review of Heritage Grove's application. It received public comments, including those by Respondent Nursing Homes, and rebuttal comments. The Program also held a public hearing.

On July 15, 2015, the Program completed review of the proposed facility. The Program conditionally approved Heritage Grove's CN application, provided that Heritage Grove agreed to five conditions. Heritage Grove accepted all five conditions, and shortly thereafter, in August, the Program approved Heritage Grove's CN application. The document it sent stated: "ISSUANCE OF THIS CERTIFICATE OF NEED IS BASED ON THE DEPARTMENT'S RECORD AND

3

EVALUATION." AR at 3153. The Director of the Office of Community Health Systems authored the approval.

Respondent Nursing Homes then requested an adjudicative proceeding to contest the CN approval. After a hearing, a health law judge affirmed the Program's approval of the CN. Respondent Nursing Homes then administratively appealed the decision.

On August 25, 2017, at the end of the administrative appeal process, the Secretary of DOH, via a designee, issued the Final Order denying the CN because the application failed both the financial feasibility and cost containment criteria. Heritage Grove did not petition the secretary's designee to stay the Final Order.

On September 21, 2017, Heritage Grove sought judicial review of the Final Order in superior court. Heritage Grove did not file a petition to stay the Final Order before October 15, 2017, which was eight years from when Heritage Grove "banked" its beds.

On August 16, 2018, the superior court affirmed the Final Order on the merits. It also dismissed the petition on mootness grounds. Heritage Grove appeals.

ANALYSIS

I.   STATUTORY INTERPRETATION

We review questions of statutory interpretation de novo. *Flight Options, LLC v. Dep't of Revenue*, 172 Wn.2d 487, 495, 259 P.3d 234 (2011). In interpreting statutes, "[t]he goal . . . is to ascertain and carry out the legislature's intent." *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). We give effect to the plain meaning of the statute as "derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Jametsky*, 179 Wn.2d at 762 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

If a statute's meaning is plain on its face, "we must give effect to that meaning as an expression of legislative intent." *Blomstrom v. Tripp*, 189 Wn.2d 379, 390, 402 P.3d 831 (2017). However, if "after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to canons of construction and legislative history." *Blomstrom*, 189 Wn.2d at 390. "A statute is ambiguous if 'susceptible to two or more reasonable interpretations,' but 'a statute is not ambiguous merely because different interpretations are conceivable.'" *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

## II.   MOOTNESS

The parties' mootness arguments involve two issues. First, they dispute whether, under RCW 70.38.115, DOH "issued" a CN to Heritage Grove within eight years. If we conclude that DOH did not issue a CN to Heritage Grove within eight years, then they next dispute whether RCW 34.05.574 of the Administrative Procedure Act (APA) enables this court to order specific performance and require that DOH overturn the Final Order and reinstate the Program's initial approval of Heritage Grove's CN application.

### A.   Legal Principles

"A case is moot if a court can no longer provide effective relief." *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 602, 229 P.3d 774 (2010). "When an appeal is moot, it should be dismissed." *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993). "'The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.'" *City of Sequim v. Malkasian*, 157 Wn.2d 251,

5

259, 138 P.3d 943 (2006) (quoting 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.3, at 261 (2d ed. 1984)).

It is undisputed that Heritage Grove's CN application failed to prove "need." Heritage Grove's CN application relied on the RCW 70.38.115(13)(b) exception so that its application did not have to prove the "need" criterion. And if DOH never "issued" Heritage Grove a CN within eight years, then Heritage Grove's need-exempt status expired. RCW 70.38.115(13)(b). Therefore, if Heritage Grove's need-exempt status expired and we are bound to remand to the agency for it to reconsider the Final Order, DOH would simply deny Heritage Grove's CN application because the application failed to prove "need" and, in turn, failed to prove all of the requisite CN application criteria.

B.      DOH Did Not Issue a CN with Its Initial Approval

Heritage Grove contends that DOH issued a CN when the Program approved Heritage Grove's application in August 2015. According to Heritage Grove, the issuance of that CN is simply in the appeals process. We disagree.

RCW 70.38.115(13)(b) allows a party to bank beds, but only "for eight years or until a [CN] to replace them is issued, whichever occurs first." In other words, a party's reservation of beds expires after eight years unless they are "issued" a CN within those eight years.

Here, the only way Heritage Grove was "issued" a CN within eight years is if the Program's August 2015 initial approval of Heritage Grove's CN application counted as such.[3]

Our goal in interpreting statutes is to determine the legislature's intent, and it is unlikely that the legislature intended for a subordinate order, later overruled, to constitute the issuance of a

---

[3] Neither party argues that the health law judge's decision affirming the Program's initial approval of Heritage Grove's CN application constituted the "issuance" of a CN.

CN such to preserve Heritage Grove's banked-bed status. Therefore, we conclude that the Program's initial approval of Heritage Grove's CN application did not constitute the issuance of a CN for the purposes of RCW 70.38.115(13)(b).

The principles of finality illustrate our conclusion. "An administrative determination is not a final order where it is a mere preliminary step in the administrative process, but it becomes final when a legal relationship is subsequently fixed upon 'consummation of the administrative process.'" *Lewis County v. Pub. Emp't Relations Comm'n*, 31 Wn. App. 853, 862, 644 P.2d 1231 (1982) (quoting *Dep't of Ecology v. Kirkland*, 84 Wn.2d 25, 30, 523 P.2d 1181 (1974)). Here, the initial approval was merely a preliminary step in the administrative process. Thus, Heritage Grove could not justifiably rely on the subordinate order because that order was appealable, was in fact appealed, and was later overruled. Additionally, the appeal to the superior court and to this court is from the Final Order, not the subordinate order.

We recognize that the subordinate order contained language indicating that it was the "issuance" of a CN. However, the nomenclature used in that subordinate order does not overrule the fact that the subordinate order was appealable and thus subject to be overturned, which it later was. *Cf. Kirkland*, 84 Wn.2d at 29 ("[W]hether or not the statutory requirements of finality are satisfied in any given case depends not upon the label affixed to its action by the administrative agency, but rather upon a realistic appraisal of the consequences of such action.").

Furthermore, Heritage Grove did not file a stay of the Final Order as permitted under the APA. *See* RCW 34.05.467. It had approximately two months, from the time the Final Order issued and the time its banked-bed status expired, to do so.[4]

---

[4] Heritage Grove does not argue that there should be any tolling of the eight-year statutory time period; therefore, we decide this issue strictly on statutory interpretation of RCW 70.30.115(13)(b).

Accordingly, we conclude that DOH did not issue a CN to Heritage Grove within eight years from when Heritage Grove banked its beds. Therefore, Heritage Grove's reservation of beds expired.

C. This Court Cannot Provide Meaningful Relief

Heritage Grove argues that this court can nonetheless provide meaningful relief because it has the authority under RCW 34.05.574 to correct the Final Order's errors and reinstate the Program's initial approval of the CN. We disagree.

Under the relief provisions of the APA,

> [A] court may (a) affirm the agency action or (b) order an agency to take action required by law, order an agency to exercise discretion required by law, set aside agency action, enjoin or stay the agency action, remand the matter for further proceedings, or enter a declaratory judgment order. . . . In reviewing matters within agency discretion, the court shall limit its function to assuring that the agency has exercised its discretion in accordance with law, and shall not itself undertake to exercise the discretion that the legislature has placed in the agency. The court shall remand to the agency for modification of agency action, unless remand is impracticable or would cause unnecessary delay.

RCW 34.05.574(1).

The dispositive question here is whether the issuance of a CN is within DOH's discretion. If so, we "shall not . . . undertake to exercise the [agency's] discretion." RCW 34.05.574(1)(b).

Pursuant to RCW 70.38.105(1), DOH "is authorized and directed to implement the [CN] program in this state pursuant to the provisions of this chapter." DOH "shall specify information to be required for [CN] applications." RCW 70.38.115(6). Additionally, CNs "shall be issued . . . by the designee of the secretary in accord with the provisions of this chapter and rules of the department which establish review procedures and criteria for the [CN] program." RCW 70.38.115(1).

8

We conclude that the legislature has vested the discretion to issue CNs solely with DOH. Accordingly, we will not and cannot exercise the agency's discretion on its behalf. Because Heritage Grove's CN application is based on a now-expired exception to showing the "need" criterion, on remand, DOH would not consider granting the CN application. In other words, agreeing substantively with Heritage Grove that the Final Order was unlawful would not provide Heritage Grove meaningful relief. Accordingly, we conclude that this case is moot.[5]

We affirm.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Lee, A.C.J.

---

[5] Heritage Grove requests attorney fees and costs under the Equal Access to Justice Act. Because we conclude that Heritage Grove does not prevail, we decline to award fees.