[No. 41225-0-II.    Division Two.    April 18, 2012.]

THE DEPARTMENT OF TRANSPORTATION, FERRIES DIVISION, *Appellant*, v. THE MARINE EMPLOYEES' COMMISSION ET AL., *Respondents*.

*Robert M. McKenna, Attorney General, Stewart A. Johnston, Senior Counsel,* and *Kara A. Larsen, Assistant,* for appellant.

*Robert M. McKenna, Attorney General,* and *Spencer W. Daniels, Assistant,* for respondent Marine Employees Commission.

*Michael R. McCarthy* (of *Reid, Pedersen, McCarthy & Ballew LLP*), for respondent Marine Engineers Beneficial Association.

¶1 QUINN-BRINTNALL, J. — On July 24, 2009, a Marine Employees' Commission (MEC) arbitrator issued a decision settling a long-standing grievance between the Washington State Ferries Division of the Department of Transportation (DOT) and the Marine Engineers' Beneficial Association (MEBA), a union representing certain ferry system employees. As part of the decision, the arbitrator ordered the DOT to pay MEBA's attorney fees. The DOT petitioned the MEC to reconsider that specific portion of the award, contending that the parties' collective bargaining agreement (CBA)[1] forbade awarding attorney fees; the MEC refused reconsid-

---

[1] This case technically involves two separate sets of employees (licensed engineer officers and unlicensed engine room employees) and, thus, two separate CBAs. Both CBAs have identical provisions requiring arbitration for grievances

eration. The DOT then petitioned Thurston County Superior Court to review the arbitrator's decision, again contending that the parties' CBA prohibited an attorney fees award. The superior court upheld the arbitrator's award. The DOT now submits a petition for common law writ of certiorari and review to this court, asserting, again, that the parties' CBA does not allow for granting attorney fees. Although Washington courts follow federal law in allowing attorney fees when a party to arbitration commits an *unfair labor practice*, MEBA has never followed the requirements for filing such a complaint as dictated by WAC 316-45-010 through -050. Accordingly, we hold that the MEC arbitrator acted ultra vires in awarding attorney fees in this grievance arbitration, and we vacate paragraph five of the arbitrator's decision, the attorney fees award.

## FACTS

¶2 On August 11, 2004, several MEBA members, in their individual capacities, filed a class action lawsuit in Pierce County Superior Court, seeking wages for time they spent performing "watch turnover" before or after their assigned shifts. MEBA did not participate in this litigation. "Watch turnover" involves the outbound crew of a seaward vessel briefly meeting with crewmembers they are relieving to receive information about the condition of the boat, any problems to be aware of, etc. Their employer, the DOT, argued that watch turnover, even outside regularly scheduled shifts, was noncompensable standard practice in the maritime industry and that the parties never discussed or bargained for watch turnover payment in their CBA. The superior court disagreed, awarding a judgment to the employees.

¶3 The DOT appealed the decision to this court. In *Davis v. Department of Transportation*, 138 Wn. App. 811, 826, 159

and identical provisions instructing each party to bear their own costs during the grievance arbitration process. For the sake of clarity, we refer to a single CBA.

P.3d 427 (2007) (*Davis* I), *review denied*, 163 Wn.2d 1019 (2008), we determined the CBA required arbitration, reversed the superior court's decision, and remanded the case for entry of a judgment in favor of the DOT. Although we held that arbitration was the appropriate forum for CBA disputes, we further stated, "[W]atch changes are a regular, essential, and required work activity for which the State must compensate under the CBA. And whether watch changes are work or whether watch changes must be compensated is not an issue for future grievance or arbitration." *Davis* I, 138 Wn. App. at 825-26. Our Supreme Court denied review of that decision. *Davis*, 163 Wn.2d 1019.

¶4 On June 8, 2007, MEBA filed grievances on behalf of its members, explicitly referencing our decision in *Davis* I. On March 14, 2008, having exhausted the CBA's grievance procedures, MEBA requested grievance arbitration before the MEC.[2] The grievance hearing took place on April 3, 2009. MEBA argued that the arbitrator, having no authority "to disregard, [or] overrule the opinion of the Court of Appeals," needed only to determine how much back pay the DOT owed and provide the arbitrator with data to make that determination. Administrative Record (AR) at 130. The DOT, however, asked the MEC to decide whether the CBA required additional overtime compensation for watch turnover, arguing that the *Davis* I decision was either (a) contrary to established law; or (b) our "pronouncements that watch turnover constitutes overtime under the CBA" were "dicta" and, as a result, the substantive issue of whether watch changes were compensable work under the CBA still needed to be determined. AR at 51. To that end, the DOT

---

[2] Former RCW 47.64.280(2)(a) (2006) vested the MEC with the power to "[a]djust all complaints, grievances, and disputes between labor and management arising out of the operation of the ferry system." On July 1, 2011, administration of chapter 47.64 RCW transferred from the MEC to the Public Employment Relations Commission (PERC). Laws of 2011, Spec. Sess., ch. 16, §§ 19, 31 (Second Engrossed Substitute S.B. 5742). The legislature further mandated that PERC rules of procedure shall apply to future proceedings under chapter 47.64 RCW and repealed Title 316 WAC. The arbitration that led to this appeal occurred in 2009, however, so we address it under the then applicable RCW and WAC provisions.

provided no data to assist the arbitrator in calculating the amount of back pay owed to MEBA's members.

¶5 On July 24, the arbitrator issued its decision, noting that

> [t]he State's argument that presupposes the [Washington State Appellate] Court improperly ruled in this matter is not a matter before the [MEC]. However, the Court properly concluded that the contract requires watch turnover pay is owed to engine room employees at [the DOT].
>
> Decisions of the MEC are subject to appeal and modification by the Courts. It is well understood that the MEC has no authority to hear an appeal or overrule decisions of the Courts. While the MEC shares the concerns of the [DOT] about the intervention of the Court into the collective-bargaining process, the [DOT] ignored the directive of the Court at its peril. Thus, when the Court determined watch changeover to be work and deferred the matter back to the grievance procedure, the [DOT] should have begun a method of record keeping to track the amount of time worked by employees. It failed to do so. It failed to take any position on remedy.

AR at 86-87. The arbitrator also instructed the DOT to "reimburse the MEBA for attorney fees incurred in bringing this grievance before the MEC." AR at 87.

¶6 On August 12, the DOT petitioned the MEC for reconsideration of the attorney fee award, contending that it violated the parties' CBA. MEBA responded that the "Arbitrator's Award is final, binding, virtually unappealable, and not subject to reconsideration," an inevitable conclusion based on the "widely-accepted doctrine of *functus officio*."[3] AR at 98. On September 8, the MEC issued its order denying

---

[3] 4 Am. Jur. 2d *Alternative Dispute Resolution* § 151 (2011) explains,

> When an arbitral board renders a final award, its powers and duties under the submission are terminated or exhausted. The common-law doctrine of functus officio provides that, once an arbitrator has issued a final award, having fulfilled his or her function, he or she is without authority to . . . reexamine the final award.

(Footnotes omitted.)

DOT's petition for reconsideration of attorney fees, explicitly stating,

> The Arbitrator acted appropriately and within his contractual authority and obligations. The Employer was on notice from the Court of Appeals that payment for watch changeover was a contractual obligation of [the DOT]. The Arbitrator was put on notice by the Court that [the DOT] and the State were aware that the Courts have spoken twice and the very language of the Court of Appeals' remand was convincing and compelling.
>
> > **We emphasize that watch changes are a regular, essential and required work activity for which the State must compensate under the CBA and whether watch changes are work or whether watch changes must be compensated is not an issue for future grievance or arbitration.**
>
> (Emphasis added.) It is only reasonable to assume that learned and esteemed counsel exhaustively argued and presented the same rationale and advocacy to the Courts that was advanced to the Arbitrator.
>
> Upon receipt of the Court of Appeals' findings, [the DOT] had every opportunity to work with the Union to pursue an appropriate remedy short of requiring the MEBA to present their members' case to an arbitrator and require additional attorney's fees, in spite of the direction of the Courts.

AR at 102-03.

¶7 Following this decision, the DOT submitted a petition for common law writ of certiorari and review of arbitration decision to Thurston County Superior Court. On August 27, 2010, the superior court affirmed the MEC decision and dismissed the DOT's petition with prejudice. The DOT now timely appeals, requesting specifically that we vacate the arbitrator's attorney fees award.

## DISCUSSION

¶8 The DOT maintains that the CBA's terms are clear and that the MEC had no authority to award attorney fees in grievance arbitration under any circumstances. Because the arbitrator acted outside his authority by sua sponte treating this grievance arbitration as an unfair labor practice dispute, and Washington courts have upheld a labor arbitrator's attorney fees award only when unfair labor practices are at issue, we vacate section five of the MEC's award.

STANDARD OF REVIEW

¶9 The CBA provisions at issue here do not specifically provide for judicial review of an arbitrator's decision. The CBA dictates that, in the event of grievance arbitration, the aggrieved party "will notify the other party of [the grievance] and will refer the dispute to the [MEC] for a final resolution." AR at 275, 294. The MEC adopted rules of procedure pursuant to the authority granted it by the legislature in former RCW 47.64.280(3)(c) (2006) ("[t]he commission shall adopt rules of procedure under chapter 34.05 RCW"). The MEC codified these rules in chapter 316-65 WAC.[4] Like the CBA, however, the rules are silent as to judicial review apart from mentioning, in the last provision of the chapter, that "[n]othing in chapter 316-65 WAC is intended to diminish the constitutional rights of any person or to limit or modify additional requirements imposed by statute, including the Administrative Procedure Act[, ch. 34.05 RCW]." WAC 316-65-600.

¶10 As we have stated in a similar context, where "such a 'statutory and contractual hiatus' exists, judicial review is nevertheless available by petitioning the superior court for a constitutional writ of certiorari." *Clark County Pub. Util.*

---

[4] The parties do not challenge the validity of the WACs.

*Dist. No. 1 v. Wilkinson*, 93 Wn. App. 350, 353, 967 P.2d 1270 (1998) (quoting *Grays Harbor County v. Williamson*, 96 Wn.2d 147, 150-53, 634 P.2d 296 (1981)), *rev'd on other grounds*, 139 Wn.2d 840, 850, 991 P.2d 1161 (2000). Article IV, section 6 of the Washington State Constitution provides, in relevant part, that

> [t]he superior court shall . . . have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court. . . . Said courts and their judges shall have power to issue writs of . . . certiorari.

The present case comes before this court pursuant to this jurisdiction.[5]

■ ■ ¶11 Review of an arbitration decision under a constitutional writ of certiorari is "limited to whether the arbitrator acted illegally by exceeding his or her authority under the contract." *Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, Local 125*, 150 Wn.2d 237, 245, 76 P.3d 248 (2003) (*Clark County PUD*). When reviewing arbitration decisions under this "extremely limited" standard of review, we do not reach the merits of the case. *Clark County PUD*, 150 Wn.2d at 245. Instead, we determine only whether the arbitrator acted outside his authority under the CBA in awarding attorney fees to MEBA. If so, the arbitrator's actions are ultra vires and the award is illegal. *See Clark County PUD*, 150 Wn.2d at 247. But so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that we are convinced he committed serious error does

---

[5] The Administrative Procedure Act (APA), chapter 34.05 RCW, like the CBA, RCW, and WAC relevant to this case, is similarly silent as to judicial review of an arbitrator's final decision. RCW 34.05.526 proclaims, "An aggrieved party may secure appellate review of any final judgment of the superior court under this chapter by . . . the court of appeals. The review shall be secured in the manner provided by law for review of superior court decisions in other civil cases." Because case law holds that it is appropriate for superior courts to address similar labor disputes through issuance of writs of certiorari, *see Wilkinson*, 93 Wn. App. at 353, it is appropriate for appellate courts (per the APA in this instance) also to engage in such review.

not suffice to overturn his decision. *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000). Thus, courts do not vacate binding arbitration awards except in very limited circumstances. *Clark County PUD*, 150 Wn.2d at 247. Whether the arbitrator acted outside his authority involves addressing a question of law and, as such, our review is de novo. *Kitsap County Deputy Sheriff's Guild v. Kitsap County*, 167 Wn.2d 428, 434, 219 P.3d 675 (2009).

MEC AUTHORITY TO AWARD ATTORNEY FEES

█ ¶12 The United States Supreme Court has held that an arbitrator must confine his or her decision or award to interpretation and application of the parties' CBA. The Court has stated, for instance,

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960). Washington courts consistently follow this standard. *See Clark County PUD*, 150 Wn.2d at 247 ("[A]n arbitrator's award is illegal if it exceeds the authority granted to the arbitrator by the parties' contract, here the CBA."); *see also City of Yakima v. Yakima Police Patrolman's Ass'n*, 148 Wn.

App. 186, 195, 199 P.3d 484 (2009) ("While an arbitrator's view of the issues submitted to him receives great deference by the courts, an arbitrator is confined to the interpretation and application of the parties' agreement.").

¶13 The CBA between the DOT and MEBA is explicit in relation to attorney fees, stating, "All costs, fees and expenses charged by the arbitrator will be shared equally by the [parties]. All other costs incurred by a party resulting from an arbitration hearing will be paid by the party incurring them." AR at 275, 295. The MEC's grievance arbitration rules further provide that "[e]ach party shall pay the expenses of presenting its own case." WAC 316-65--150. Last, the legislature has provided that

> [n]egotiated procedures may provide for binding arbitration of ferry employee grievances and of disputes over the interpretation and application of existing agreements. An arbitrator's decision on a grievance shall not change or amend the terms, conditions, or applications of the collective bargaining agreement. . . . The costs of arbitrators shall be shared equally by the parties.

RCW 47.64.150. Whether, despite the clear language in the CBA, WAC, and RCW, an MEC arbitrator may grant attorney fees[6] as part of a grievance arbitration is an issue of first impression.

A. ATTORNEY FEES FOR UNFAIR LABOR PRACTICES

¶14 Washington courts have upheld an arbitrator's attorney fees award when a disputant alleges an unfair labor practice. In *State ex rel. Washington Federation of State Employees, AFL-CIO v. Board of Trustees of Central Washington University*, 93 Wn.2d 60, 605 P.2d 1252 (1980), our

---

[6] MEBA argued at the grievance arbitration that it was entitled to double damages and attorney fees pursuant to RCW 49.52.050(2), a wage recovery statute. In *Hitter v. Bellevue School District No. 405*, 66 Wn. App. 391, 397-98, 832 P.2d 130, *review denied*, 120 Wn.2d 1013 (1992), Division One of this court, however, clearly held that statutory rights to attorney fees can be bargained away in a CBA. We see no reason to disagree with this determination.

Supreme Court addressed whether the Higher Education Personnel Board (HEPB) had authority, pursuant to RCW 41.56.160, an unfair labor practices provision, to award attorney fees as part of an arbitration award. The court concluded that

> the legislature has "empowered and directed" the HEPB to prevent unfair labor practices. We believe "remedial" action encompasses the power to award attorney fees under appropriate circumstances. We hold that RCW 41.56.160 is broad enough to permit a remedial order containing an award of litigation expenses when that is necessary to make the order effective. Such an allowance is not automatic, *but should be reserved for cases in which a defense to the unfair labor practice charge can be characterized as frivolous or meritless. . . .* Awards should not be permitted routinely, simply because the charging party prevails.

*Wash. Fed'n of State Emps.*, 93 Wn.2d at 69 (emphasis added).[7] In a later HEPB case, our Supreme Court again upheld an arbitrator's attorney fees award in an unfair labor practice case, noting, "The remedy is proper to curtail the college's arbitrary behavior and to prevent its reoccurrence, and is necessary to make the order to negotiate in good faith at reasonable times effective." *Green River Cmty. Coll., Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442, 730 P.2d 653 (1986). Similarly, we have held that the Public Employment Relations Commission has the authority to award attorney fees in disputes over unfair labor practices. *Lewis County v. Pub. Emp't Relations Comm'n*, 31 Wn. App. 853, 866-67, 644 P.2d 1231, *review denied*, 97 Wn.2d 1034 (1982).

¶15 Federal law also provides guidance. *See Clark County PUD*, 150 Wn.2d at 246 n.7 ("Our state courts have

---

[7] The court also explicitly stated that "[u]nder the general rule followed in this state, recovery of attorney fees is permitted 'only when authorized by a private agreement of the parties, a statute, or a recognized ground of equity.' " *Wash. Fed'n of State Emps.*, 93 Wn.2d at 67 (quoting *Crane Towing, Inc. v. Gorton*, 89 Wn.2d 161, 176, 570 P.2d 428 (1977)). This is the so-called "American rule" for attorney fees in arbitration.

often looked to federal case law for guidance in analyzing labor disputes."). Here, former RCW 47.64.130 (2006), addressing unfair labor practices, is substantially similar to 29 U.S.C. § 158 of the National Labor Relations Act (NLRA). Both state that it is an unfair labor practice of an employer organization to "refuse to bargain collectively with the representatives" of its employees. 29 U.S.C. § 158(a)(5); former RCW 47.64.130(1)(e).

¶16 In *International Union of Electrical, Radio & Machine Workers v. National Labor Relations Board*, 138 U.S. App. D.C. 249, 426 F.2d 1243, *cert. denied*, 400 U.S. 950 (1970), the District of Columbia Circuit held that section 160(c) of the NLRA authorized the National Labor Relations Board (NLRB) to award litigation expenses and remanded the case to the NLRB for that determination. *Int'l Union of Elec., Radio & Mach. Workers*, 138 U.S. App. D.C. at 259 n.15 ("The scope of the Board's consideration on remand, if it is deemed that the Union's proposal goes too far, would include consideration of such lesser, alternative remedies as an award to the Union for excess organization costs caused by the Company's behavior, *or for the costs of having to litigate a frivolous case*, or for a combination of these." (emphasis added)). On remand, the NLRB stated:

> We agree with the court . . . that frivolous litigation such as this is clearly unwarranted and should be kept from the nation's already crowded court dockets, as well as our own. While we do not seek to foreclose access to the Board and courts for meritorious cases, we likewise do not want to encourage frivolous proceedings. The policy of the Act to insure industrial peace through collective bargaining can only be effectuated when speedy access to uncrowded Board and court dockets is available. Accordingly, in order to discourage future frivolous litigation, to effectuate the policies of the Act, and to serve the public interest we find that it would be just and proper to order Respondent to reimburse the Board and the Union for their expenses incurred in the investigation, preparation, presentation, and conduct of these cases, including . . . reasonable counsel fees, salaries, witness fees, transcript and record costs,

printing costs, travel expenses and per diem, and other reasonable costs and expenses.

*Tiidee Prods., Inc.*, 194 N.L.R.B. 1234, 1236-37 (1972).

¶17  Thus, both state and federal law provide persuasive support that an MEC arbitrator could award attorney fees when a party to collective bargaining commits an unfair labor practice by refusing to collectively bargain in good faith. Such is not the case here, however.

B. GRIEVANCE ARBITRATION ATTORNEY FEES

¶18  Although our Supreme Court has held that a labor arbitrator is authorized to award attorney fees in unfair labor practice disputes, here the parties were engaged in grievance arbitration under their CBA—an agreement explicitly providing that the parties pay their own attorney fees. Accordingly, we must vacate paragraph five of the arbitrator's award granting attorney fees to MEBA.

¶19  As both parties note, this is the first time in MEC's history that an arbitrator has awarded attorney fees in the context of grievance arbitration. Even assuming arguendo that the DOT's refusal to pay for watch changes or to keep track of money owed its employees for these duties constituted an unfair labor practice, following our explicit mandate to pay for such activity in our 2007 *Davis I* opinion, MEBA has never explicitly argued that this was an unfair labor practice to this court, the superior court, or the MEC. The MEC adopted clear procedures for bringing unfair labor practice claims. *See* WAC 316-45-001 through -050. As WAC 316-45-050, entitled "Contents of complaint charging unfair labor practice," states, "Each complaint must contain . . . (4) [a] listing of the subsections of RCW 47.64.130 and/or WAC 316-45-003 alleged to have been violated, along with a statement of which alleged facts provide evidence of that alleged violation of the identified subsections."

¶20  Although refusal "to bargain collectively with the representatives of its employees" is an unfair labor practice

under either former RCW 47.64.130 or WAC 316-45-003(1)(e), MEBA has never alleged that a refusal to bargain occurred here. Indeed, its response at oral argument—stating, in effect, that MEBA expected to attend grievance arbitration over the amount of back pay owed by the DOT for watch turnover—belies its assertions that DOT's frivolous conduct necessitated (unnecessary) grievance arbitration.[8]

¶21 We are aware that the legislature failed to define "grievance" in chapter 47.64 RCW and, further, that WAC 316-65-005 defines a "grievance" as

> [a] formal statement alleging injury, injustice, or violation of rights granted by rule, statute, collective bargaining agreement, or past practice: Provided, That any grievance involving alleged violations of rights protected by chapter 47.64 RCW may also be termed "unfair labor practices" and may also be filed and processed under chapter 316-45 WAC: And Provided Further, That when the commission is requested to provide grievance arbitration in a dispute *where there is an unfair labor practice issue brought*, which in the judgment of the commission raises the same or a closely related subject, and it would further the economy and efficiency of operations, the commission may consolidate such issues for hearing and decision.

(Emphasis added.) But even if this definition conflates the fine distinction between "unfair labor practices" and "grievances," the only grievance MEBA alleged to the MEC was

---

[8] At oral argument before this court, MEBA conceded that the DOT had the right to proceed to grievance arbitration:

The Court: But how could it be frivolous for [the DOT] to come in and litigate [the *Davis* I decision]?
MEBA: . . . They were welcome to come to arbitration . . . arbitration was going to happen; what matters is what they did once they were there; they established that they failed to keep any records, to document the extent of their liability under the first *Davis* decision. They refused to take any position with respect to the amount of money owed under the first *Davis* decision.

Wash. Court of Appeals oral argument, *Dep't of Transp., Ferries Div. v. Marine Emps.' Comm'n*, No. 41225-0-II (Oct. 18, 2011), at 26 min., 30 sec.—27 min., 10 sec. (on file with the court).

that the *Davis* I decision required the DOT to pay for watch turnover and that the MEC needed to determine the amount the DOT owed. Further, WAC 316-45-020(2) expressly provides for procedures when a party brings both grievance *and* unfair labor practice issues before the MEC:

> Where an alleged violation of RCW 47.64.130, or the regulations implementing that statute, is also alleged to be a violation of a collective bargaining agreement and the matter is being actively pursued through the grievance and arbitration procedure of the collective bargaining agreement, the commission may hold the unfair labor practice in abeyance pending the outcome of the grievance and arbitration procedure. If the commission then determines that the grievance and arbitration procedure has satisfactorily resolved the entire matter or any portion of it, the commission may defer to that decision and dismiss the entire unfair labor practice complaint or that portion of it that has been resolved to the satisfaction of the commission. Otherwise, the commission will resume processing the unfair labor practice complaint or any portion of it that has not been resolved to the satisfaction of the commission.

¶22 Again, however, MEBA has never alleged that an unfair labor practice occurred. Thus, although WAC 316-45-020(2) provides for judicial economy when both an unfair labor practice and a CBA grievance require attention, it does not give an MEC arbitrator authority to address as an unfair labor practice claims the parties did not present. These are sophisticated parties adept at asserting their rights.[9] We are confident that had MEBA reason to believe the DOT was committing an unfair labor practice, it would have brought the matter before the MEC.

¶23 By refusing to comply with our *Davis* I decision by adjusting schedules or even keeping time records for the disputed watch turnovers, the DOT came to grievance arbitration unprepared to discuss settlement terms. Thus,

---

[9] For instance, the MEC asserts that in January 2011, it heard 18 active disputes, "eight unfair labor practice complaints, one unit clarification petition, and nine grievance arbitrations." Resp't MEC Br. at 6.

the MEC arbitrator determined the back pay calculation based solely on MEBA's figures.[10] Although MEBA makes a compelling argument that the DOT was inexcusably recalcitrant in addressing shift change wages and that the sanction of awarding attorney fees was appropriate, the parties' CBA expressly deprives the MEC arbitrator of authority to do this. Further, nothing in case law or our review of applicable statutes and administrative rules leads us to conclude that an MEC arbitrator may sua sponte address an unfair labor practice in a grievance arbitration. Accordingly, we hold that the DOT and MEBA were bound to their bargained agreement and the MEC arbitrator acted ultra vires in awarding attorney fees in paragraph five of his award; we vacate paragraph five of the arbitrator's award. RCW 34.05.574(1).

ARMSTRONG and HUNT, JJ., concur.

---

[10] Although ignoring our *Davis* I decision negatively affected DOT's position on the back pay it owed MEBA, the arbitrator was well within his powers to determine the back pay calculation using only MEBA's figures.